IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE GARCIA,

    Plaintiff,

v.                                      Case No. 20C0988

VILLAGE OF LAKE DELTON, et al.,

    Defendants.

---

**BRIEF IN SUPPORT OF STATE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

**INTRODUCTION**

"A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court." *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* "Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* at 424-25.

The concern the United States Supreme Court expressed long ago rings true still today. In this case, Plaintiff Jose Garcia transformed his resentment at being prosecuted for child sexual assault into false arrest and failure to intervene claims

against two Wisconsin prosecutors, Sauk County Assistant District Attorneys Linda Hoffman and Rick Spoentgen (State Defendants).

Garcia's claims—that prosecutors Spoentgen and Hoffman effectuated his arrest without probable cause and failed to prevent his arrest—fail on absolute immunity, issue preclusion, and qualified immunity grounds. Accordingly, this Court should grant the State Defendants' motion for summary judgment and dismiss this case.

## BRIEF STATEMENT OF FACTS

The sexual assault allegations against Garcia arose from a report filed with the Lake Delton Police Department on August 23, 2016 by Monique Cichocki. Ms. Cichocki provided a detailed account of Garcia's alleged sexual assault of her daughter GC [1] in a pool while the families were together at a resort in Wisconsin Dells on August 18, 2016. Lake Delton Police Department initiated an investigation. Detective Sean Posewitz interviewed Ms. Cichocki and GC on August 25, 2016. Posewitz viewed surveillance video of the pool and emailed Ms. Chichocki photos of the pool, asking her to specify the location where GC and Garcia were located during the alleged assault. Ms. Cichocki responded with two marked photos. (State Defendants' Proposed Findings of Fact (SDPFOF) 11-17.)

In September 2016, ADA Spoentgen was asked to aid in reviewing the sexual assault case that had come in from Lake Delton P.D. Spoentgen spoke to Detective Posewitz about the allegations and reviewed the reports. Spoentgen then discussed

---

[1] The minor victim will be identified by initials, GC.

the information in the reports with ADA Hoffman, who made suggestions to Spoentgen for possible further investigation for the police to perform. Spoentgen summarized investigative suggestions in a document and sent it to Detective Posewitz. (SDPFOF 19-25.)

On October 2, 2016, ADA Spoentgen prepared the Criminal Complaint based on review of Lake Delton Police Reports and sent a draft to ADA Hoffman and Det/Posewitz for review before filing. Posewitz was the swearing complainant attesting to probable cause for the Criminal Complaint charging Garcia with two counts of sexual assault of a child under 16 signed on October 3, 2016. (SDPFOF 36-38.) Circuit Court Commissioner Leo Grill found probable cause and signed the Arrest Warrant on October 3, 2016. (SDPFOF 83.)

The timeline of Hoffman's involvement in the Garcia criminal case spanned October 4, 2016, to July 19, 2018, and involved prosecutorial duties and discretion. (SDPFOF 48-78.) From October 4, 2016, until Hoffman decided to seek a new position in July 2018, she was primarily responsible for aspects of the prosecution including countless hours reviewing police reports and recordings, speaking to victims and witnesses, speaking with defense counsel, preparing and filing motions, court appearances and ultimately trial preparation. Hoffman reviewed all police reports and spoke to witnesses. During each conversation all members of the family were extremely credible and convincing that Garcia had committed the sexual assaults and there was never any indication that any of them would have any reason or motivation to falsely accuse Garcia who was such a long-time close family friend. (SDPFOF 46-

47.) During the entirety of the prosecution of Garcia, Hoffman believed Garcia committed the crimes of which he was accused. That belief still exists today, and if not for changing positions, Hoffman would have retried the case. (SDPFOF 79-81.)

Garcia retained Attorney Jay Englund before he traveled to Wisconsin for his initial appearance in Sauk County. Englund filed many motions on behalf of Garcia. England never filed a motion to dismiss the charges against Garcia based on lack of probable cause. (SDPFOF 84-86.)

On February 16, 2017, the Sauk County Circuit Court held a preliminary hearing in the criminal case. Garcia appeared along with Attorney England. Hoffman appeared on behalf of the State of Wisconsin. The State (Hoffman) called Posewitz who summarized his investigation of Garcia and allegations of sexual assault by GC. (SDPFOF 87-93.)

Attorney Englund cross-examined Det. Posewitz about his investigation, inconsistencies in GC's report, whether GC was assaulted once or twice, timing of the assaults, and video evidence. (SDPFOF 94-110.)

Hoffman asked one question on re-direct about the quality of the video, which Posewitz said was poor. During re-cross, Posewitz testified that it was difficult to differentiate adults from children in the video, but he could tell when people were touching each other. The State did not call any additional witnesses. Garcia chose not to call any witnesses on behalf of the defense. (SDPFOF 111-14.)

At the close of the evidence, Englund argued that Garcia should not be bound over for trial unless there was a substantial probability that the State's theory is

4

correct. Englund pointed out discrepancies in GC's report of the events, whether GC was assaulted once or twice, the location and duration of the assaults, and that video did not show two bodies coming together for any two-minute periods. (SDPFOF 115-16.)

When issuing its decision, the court noted that the quantum of probable cause at the preliminary examination is higher than at other stages of the proceedings: "probable cause is satisfied when there exists a believable or plausible account of the defendant's commission of a felony." The court decided, "I am satisfied that the facts set forth here from Detective Posewitz's testimony, together with the reasonable inferences that can be drawn from those facts, do support probable cause to believe that a felony has been committed and probable cause to believe that the felony was committed by the defendant, so the court does bind the defendant over for trial." (SDPFOF 117-19.)

The criminal case against Garcia proceeded to the first day of trial including voir dire, empaneling a jury, and opening statements. During the course of the opening argument by the state prosecutor, some things were said that prompted defense counsel to ask for a mistrial. The topic or the issue of the mistrial was the prosecutor's statement that GC had some type of learning disability. The judge granted a mistrial because of a reference to a learning disability that was not disclosed during discovery. (SDPFOF 120-23.)

Spoentgen and then-District Attorney Kevin Calkins received the Garcia case after Hoffman had transferred to her current role as Victim Witness Coordinator.

5

Spoentgen and Calkins both re-reviewed the case file. They collectively determined that while there was probable cause that the charged violations occurred, and while the alleged sexual contact may have occurred as described by the victim, they believed there was insufficient evidence to prove Garcia's guilt beyond a reasonable doubt to a jury. A motion to dismiss was filed. The motion was granted, and the case file was closed. (SDPFOF 124-27.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are construed in the light most favorable to the non-movant. *Poer v. Astrue,* 606 F.3d 433, 438–39 (7th Cir. 2010). The purpose of summary judgment is to "dispose of claims that have no factual support" before moving on to trial. *Vukadinovich v. Bd. Of School Trustees of N. Newman Sch. Corp.,* 278 F.3d 693, 699 (7th Cir. 2002). It is not regarded as a "disfavored procedural shortcut, but rather as an integral part of the Federal Rules ... designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (internal quotations omitted). If the defendant makes an initial showing that the record demonstrates the absence of any factual dispute material to the grounds for the motion, the burden then shifts to the non-movant to "make a showing sufficient to establish the existence of an element essential to that party's case," *id.* at 322—that is, "put up or shut up[.]" *Goodman v. National Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). The non-moving party must provide "evidence on which a

6

reasonable jury could rely," *Goodman,* 621 F.3d at 654, and "[t]he mere existence of an alleged factual dispute" will not be sufficient to overcome a motion for summary judgment. *Vukadinovich,* 278 F.3d at 699.

## ARGUMENT

**I. The State Defendants are entitled to summary judgment because of prosecutorial or absolute immunity.**

**A. A prosecutor is protected by absolute immunity when performing prosecutorial functions.**

State prosecutors enjoy absolute immunity from civil suits for activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *accord Foreman v. Wadsworth*, 844 F.3d 620, 624 (7th Cir. 2016). Prosecutorial immunity is based upon the same considerations that underlie judicial immunity. *See id.* at 422–423. These considerations include "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *See id.* at 423.

Whether a prosecutor is protected by absolute immunity depends on the nature of the work performed. *Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016). Work that "relates to [a prosecutor's] role as an advocate for the state" is covered by absolute immunity. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1102 (7th Cir. 2015). For example, "initiating a prosecution" and "presenting the State's case" are core prosecutorial functions shielded by absolute immunity. *Imbler*, 424 U.S. at 430.

A prosecutor's "evaluation of evidence assembled by the police" is also protected by absolute immunity. *Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (noting that prosecutorial acts "must include the professional evaluation of the evidence assembled by the police"). And relatedly, a prosecutor's "drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court" are all prosecutorial acts covered by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

By contrast, work that relates to an administrative or investigatory role is not protected by absolute immunity and is instead covered by qualified immunity. *Buckley*, 509 U.S. at 273 (1993) ("[A]dministrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution for judicial proceedings are not entitled to absolute immunity.") Examples of investigatory or administrative functions unprotected by absolute immunity include speaking to the media,[2] offering advice to the police about an unarrested suspect,[3] and acting as a complaining witness[4].

Importantly, a prosecutor's "motives are irrelevant to the absolute immunity question." *Tobey v. Chibucos*, 890 F.3d 634, 649 (7th Cir. 2018). Again, "[p]rosecutors are absolutely immune for actions they undertake in their capacities as prosecutors,

---

[2] *Buckley v. Fitzsimmons*, 509 U.S. 259, 277–78 (1993).
[3] *Burns v. Reed*, 500 U.S. 478, 496 (1991).
[4] *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

8

even including malicious prosecution unsupported by probable cause." *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017); *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) ("[A]bsolute immunity shields prosecutors even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'").

### B. The State Defendants are protected by absolute immunity because they performed prosecutorial functions.

Here, prosecutors Spoentgen and Hoffman are entitled to absolute immunity because they acted in their roles as advocate for the state during the Garcia criminal case. *See Kalina*, 522 U.S. at 129.

In his prosecutorial role, Spoentgen evaluated the law enforcement reports and made some suggestions for possible additional investigation, which he provided to Posewitz. He then determined the evidence was sufficiently strong for charges and decided to draft and file a Criminal Complaint. The Court Commissioner found probable cause and issued the arrest warrant. (SDPFOF 19-27, 41.) Further, Spoentgen was not the complaining witness for the Criminal Complaint. Posewitz signed the Criminal Complaint as the Complainant and Spoentgen approved the Complaint on behalf of the office of the District Attorney. (SDPFOF 37, 39.) And Spoentgen did not engage in any investigatory function or role. (SDPFOF 34.) Spoentgen's actions fall squarely within core prosecutorial functions, and he is thus protected by absolute immunity. *See Kalina*, 522 U.S. at 129; *Buckley*, 509 U.S. at 273.

9

In her prosecutorial role, Hoffman reviewed the case pre-charge and arrest when consulted by Spoentgen. She suggested the possibility of doing a pretext phone call, but none was ever done. She reviewed and proposed changes to the Criminal Complaint drafted by Spoentgen. (SDPFOF 33-36.) After being assigned the case on October 4, 2016, until Hoffman decided to seek a new position in July 2018, she was primarily responsible for all aspects of the prosecution including countless hours reviewing police reports and recordings, speaking to victims and witnesses, speaking with defense counsel, preparing and filing motions, court appearances and trial preparation and the first day of jury trial. (SDPFOF 46-78.) And Hoffman did not investigate any allegations. The investigative function resides solely with law enforcement. (SDFOF 45.) Hoffman's actions also fall squarely within core prosecutorial functions so she is protected by absolute immunity. *See Kalina*, 522 U.S. at 129; *Buckley*, 509 U.S. at 273.

**II.  The State Defendants are entitled to summary judgment because Garcia's claims are barred by the doctrine of collateral estoppel or issue preclusion.**

    **A.  Issue preclusion bars relitigation if the elements of issue preclusion are satisfied.**

The general standard for applying issue preclusion (also called "collateral estoppel") is analyzed under Wisconsin law. Generally, the first questions are whether the same issue was actually litigated, determined by a valid and final judgment, and whether the determination is essential to the judgment. F*irst Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772–73 (7th Cir.2013) (quoting *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis.2d 381, 497 N.W.2d 756, 762 (Ct.App.1993)).

10

In *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984), the Seventh Circuit affirmed the District Court's decision that Guenther was collaterally estopped from litigating the Fourth Amendment probable cause issue because that issue was decided against him at his preliminary hearing. *Id.* at 881.

As specifically relating to the preclusive effect of preliminary hearings in Wisconsin, the *Guenther* court stated as follows:

> We also conclude that Guenther was given a "full and fair opportunity to litigate" his probable cause challenges in the preliminary hearing. The Supreme Court has recently indicated that to satisfy the "full and fair opportunity to litigate" requirement, the prior state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process clause". And "no single model of procedural fairness, let alone a particular form of procedure is dictated by the Due Process Clause .... 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'"
>
> Admittedly, in Wisconsin, a preliminary hearing is typically a summary proceeding designed merely to determine whether there is sufficient evidence to establish a reasonable probability that defendant has committed a crime. And, a Fourth Amendment judicial determination of probable cause need not be accompanied by the full panoply of adversarial-type safeguards—e.g., counsel, confrontation, and cross-examination of witnesses. However, Guenther requested and received a much more extensive and probing hearing than required by Wisconsin law or the Fourth Amendment. As mentioned above, Guenther's counsel was permitted to cross-examine Holmgreen and the other state witnesses, and to present his own rebuttal witness in an attempt to impeach the integrity of the evidence supporting probable cause. The hearing Guenther was given compared favorably, in nature and scope, with the full adversarial-type evidentiary hearings countenanced in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1977) and *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). *See Searing v. Hayes*, 684 F.2d 694, 695 (10th Cir.1982) (full and fair opportunity to litigate legality of search met even though plaintiff was denied Franks-type evidentiary hearing on the question of the truthfulness of the affiants).

11

*Guenther*, 738 F.2d at 885–86.

### 1.   The first element, same issue, is satisfied.

The question in the present case is whether State Defendants arrested without probable cause or failed to intervene in the arrest. This Court should examine whether the underlying court actually and necessarily decided an issue that would now preclude recovery in the present action. *First Weber Group, Inc,* 738 F.3d at 773. The existence of probable cause defeats claims for false arrest, unlawful detention, and malicious prosecution. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) ("To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest"); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1071 (N.D. Ill. 2018) (holding that a claim for unlawful detention under the Fourth Amendment requires a seizure of the plaintiff pursuant to legal process unsupported by probable cause); *Vaughn v. Chapman*, 662 Fed. App'x 464, 467 (7th Cir. 2016) (holding that probable cause is a complete defense to malicious prosecution).

The Sauk County Circuit Court's decision finding probable cause controls the fundamental issue in this case, whether State Defendants violated Garcia's Fourth Amendment rights and effectuated his arrest without probable cause that he committed a crime. *Guenther*, 738 F.2d at 881. Thus, the same issue was litigated in state court. (SDPFOF 87, 117-19.)

      2.  <u>The issue was actually litigated.</u>

  To determine whether an issue was "actually litigated," the court should consider whether: (1) the parties were fully heard; (2) the former court's decision was the result of a well-reasoned opinion; (3) the decision was subject to an appeal, or in fact appealed; and (4) the decision was "procedurally definite." *Davis v. Schott*, No. 17-CV-1355-JPS, 2019 WL 2717207, at *5 (E.D. Wis. 2019).

  First, the parties were fully heard at the preliminary hearing. On February 16, 2017, the Sauk County Circuit Court held a preliminary hearing in the criminal case. Garcia appeared in person, along with Englund, his attorney. Hoffman appeared on behalf of the State of Wisconsin. The State (Hoffman) called Posewitz who summarized his investigation of Garcia and allegations of sexual assault by GC. (SDPFOF 87-93.)

  Attorney Englund cross-examined Posewitz about his investigation, inconsistencies in GC's report, the number and timing of the assaults on GC, and the video evidence. (SDPFOF 94-110.) The State did not call any additional witnesses. Garcia chose not to call any witnesses on behalf of the defense. (SDPFOF 111-14.)

  Garcia was given the opportunity to present oral argument at the close of the evidence. Garcia's attorney argued that Garcia should not be bound over for trial unless there was a substantial probability that the State's theory is correct. Englund pointed out discrepancies in GC's report of the events, whether GC was assaulted once or twice, the location of the assault and the timing, and that the video did not show two bodies coming together for the two-minute periods. (SDPFOF 115-16.)

13

Second, the circuit court issued a well-reasoned preliminary hearing decision finding probable cause. The court noted that the quantum of probable cause at the preliminary examination is higher than at other stages of the proceedings: "probable cause is satisfied when there exists a believable or plausible account of the defendant's commission of a felony." The court decided, "I am satisfied that the facts set forth here from Detective Posewitz's testimony, together with the reasonable inferences that can be drawn from those facts, do support probable cause to believe that a felony has been committed and probable cause to believe that the felony was committed by the defendant, so the Court does bind the defendant over for trial." (SDPFOF 117-19.)

Third, the preliminary hearing decision was subject to a motion to dismiss or appeal. In *State v. Webb*, the Wisconsin Supreme Court stated as follows:

> A defendant is not without remedy prior to trial. If the defendant is dissatisfied with what occurred at the preliminary hearing, he can seek relief before trial in a motion to dismiss brought before the trial court based on errors or insufficiencies of the preliminary hearing. He may challenge his bindover by way of a permissive interlocutory appeal from the non-final order binding him over for trial. Section 809.50, Stats. Further, he may challenge the bindover by supervisory writ if he can show that there was in fact a defect in subject matter or personal jurisdiction. Section 809.51.

*State v. Webb*, 160 Wis.2d 622, 636, 467 N.W.2d 108 (1991).

Fourth, the decision was procedurally definite. Garcia did not seek reconsideration and had the opportunity to appeal. He chose not to pursue an appeal. The decision stood, and Garcia was bound over for trial and proceeded to jury trial. (SDPFOF 119-20.)

3.   The determination of the issue was essential to the final judgment.

The probable cause decision at the preliminary hearing was essential to the case proceeding to trial. Otherwise, the charges against Garcia would have been dismissed. Under Wis. Stat. s. 970.03(7), "If the court finds probable cause to believe that a felony has been committed by the defendant, it shall bind the defendant over for trial." Alternatively, under Wis. Stat. s. 970.03(9), "If the court does not find probable cause to believe that a crime has been committed by the defendant, it shall order the defendant discharged forthwith." Garcia was not discharged, he was bound over for trial. Thus, the decision was essential to bind over which allowed the case to proceed to trial.

**B.   Application of issue preclusion is fundamentally fair.**

After determining as a matter of law whether issue preclusion applies, the second question is whether the application would be fundamentally fair. *Davis v. Schott*, 2019 WL 2717207, at *5 (E.D. Wis. 2019)(citing *In re Estate of Rille v. Physicians Ins. Corp.*, 2007 WI 36, ¶¶ 61-63, 300 Wis.2d 1, 728 N.W.2d 693.)

Once a court determines that an issue was actually litigated, it must determine whether issue preclusion would be "fundamentally fair" considering five factors:

The factors to be considered in determining whether to apply issue preclusion are as follows:

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

15

> 3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;
>
> 4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and
>
> 5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*In re Estate of Rille*, 2007 WI 36 at ¶ 61, 300 Wis.2d 1, 728 N.W.2d 693.

The weight to be given to each of these factors involves a circuit court's exercise of discretion. Factors 1, 2, and 4 of the analysis present questions of law. Factors 3 and 5 generally fall within the circuit court's exercise of discretion. *Id.* at ¶ 62. These factors are illustrative but not dispositive. The most important factor to be considered is fairness to the party against whom preclusion is asserted and this fairness determination should be made on a case-by-case basis. *Id.* at ¶ 63. The Eastern District of Wisconsin applied the *Rille* factors in *Davis*, 2019 WL 2717207 at *5.

The factors here all point in favor of applying issue preclusion. Garcia had ample opportunity to seek review of the judgment in state court through a motion for reconsideration or appeal. The issue before this Court is identical to the issue before the state court, i.e., whether the arrest violated Garcia's Fourth Amendment rights because the decision was not supported by probable cause. There have been no changes to the law of probable cause and the burden that prosecutors must meet to draft and file a criminal complaint. There have been no changes in the sea of Fourth Amendment law; therefore, there is no reason for the Court to re-evaluate the state

16

court's conclusion. Additionally, the quality and extensiveness of the state court's litigation processes provides a solid reason to apply issue preclusion. The circuit court judge allowed Garcia extensive cross examination of the State's witness and offered him the ability to call his own witnesses. And the governments burden in the state court litigation (probable cause for bind over) was higher than it is here, as that was a criminal proceeding, and this is a civil proceeding. Finally, there are no individual or public policy concerns that work against the Court applying issue preclusion. Garcia was represented throughout the criminal proceedings by Attorney Englund, including at the preliminary hearing. It is well-settled that the existence of probable cause defeats claims for false arrest and unlawful detention claims advanced by Garcia. Thus, such a public policy concern does not exist here. *See Neita*, 830 F.3d at 497; *Williams*, 315 F. Supp. 3d at 1071.

Therefore, this Court should find that issue preclusion bars the claims of false arrest and failure to intervene against Defendants Spoentgen and Hoffman.

### III.   State Defendants are entitled to Qualified Immunity.

To the extent the Court finds a disputed issue of fact regarding the investigative actions of the State Defendants or declines to apply issue preclusion, the State Defendants are immune from suit. A prosecutor acting in an investigative capacity may claim the same qualified immunity that protects police officers and other law-enforcement investigators. *Fields v. Wharrie* ("Fields II"), 740 F.3d 1107, 1111 (7th Cir. 2014).

17

### A. Applicable Legal Principles.

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right must be sufficiently clear "that *every* reasonable official would have understood that what he is doing violates that right. *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted) (emphasis added). This is an extremely high bar. *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012). To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (emphasis added). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Qualified immunity may be available to a defendant "even if the existence of disputed issues of fact precludes a grant of summary judgment on the merits." *Green v. Carlson*, 826 F.2d 647, 652 n.4 (7th Cir. 1987). Evidence concerning a defendant's subjective intent is "simply irrelevant." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Thus, except in extraordinary circumstances, a public official's actual

18

knowledge is irrelevant to the determination of whether there is immunity from suit. *McKinley v. Trattles*, 732 F.2d 1320, 1324 (7th Cir. 1984). An allegation of malice does not defeat immunity if the defendant acted in an objectively reasonable manner. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Similarly, acting out of spite is irrelevant if the conduct is objectively lawful. *Anderson v. Romero*, 72 F.3d 518, 521 (7th Cir. 1995).

While the Supreme Court's case law "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (internal quotations omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

### B. State Defendants are entitled to Qualified Immunity.

To prevail, Garcia must establish that it was beyond debate, to someone in State Defendants' positions, that they would violate his constitutional rights by their decisions and actions. Garcia cannot do so.

State Defendants' decisions to seek an arrest warrant and prosecute Garcia for sexual assault of a child were not prohibited by clearly-established law; they followed existing law. *See Neita*, 830 F.3d at 497; *Williams*, 315 F. Supp. 3d at 1071; *Vaughn*, 662 Fed. App'x at 467. There was never a finding that the arrest or prosecution was effected and/or continued without probable cause. The mistrial was a result of a statement made in the opening and the decision to dismiss was not made because of

19

the lack of probable cause. Thus, State Defendants are entitled to qualified immunity on the Fourth Amendment claim.

As for the failure to intervene claim, there was no controlling law in 2016 stating that a prosecutor must intervene to prevent an arrest made pursuant to a valid arrest warrant issued with a criminal complaint.

## CONCLUSION

Defendants Spoentgen and Hoffman respectfully request the Court grant their Motion for Summary Judgment and dismiss all claims against them.

Dated: October 22, 2021.

    Respectfully submitted,

    JOSHUA L. KAUL
    Attorney General of Wisconsin

    s/Gesina S. Carson
    GESINA S. CARSON
    Assistant Attorney General
    State Bar #1055162

    JENNIFER R. REMINGTON
    Assistant Attorney General
    State Bar #1098838

    Attorneys for State Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1672 (Carson)
(608) 267-2230 (Remington)
(608) 294-2907 (Fax)
carsongs@doj.state.wi.us
remingtonjr@doj.state.wi.us